UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-00844-BR

| | | |
|---|---|---|
| BYRON C. BRIGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion to set aside the certification of this litigation pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. ("The Westfall Act"). (DE # 18.) The motion has been fully briefed and is ripe for disposition.

## I. BACKGROUND

Plaintiff filed an action for malicious prosecution against Raymond P. Lacey, the head of the United States Army Directorate of Family, Morale, Welfare and Recreation ("MWR") at Fort Bragg, on 14 November 2013 in the Superior Court of Cumberland County. (DE # 1-1.) The government removed the action to this court on 10 December 2013. (DE # 1.) On the same date, the government submitted certification that Lacey was acting within the scope of his employment at all times of the incidents alleged in the complaint and substituted itself as the proper defendant in this action. (DE # 2, at 1-2.)

At the time of the incidents alleged in the complaint, Lacey acted as supervisor to plaintiff's mother, Lisa Briggs. (Lacey Declr., DE # 22-2, at 1.) On 4 October 2014, Lacey had a meeting with Ms. Briggs, who was accompanied by her attorney, to discuss ongoing conflicts she was having with coworkers that had manifested through multiple hostile emails. (Id.; DE #

18-1, at 1.)  During the meeting, Lacey presented Ms. Briggs with a memorandum instructing her not to send emails outside the organization and to vet her email through her supervisors.  (Lacey Declr., DE # 22-2, at 1.)  Lacey also offered Ms. Briggs voluntary counseling with the Employee Assistance Program ("EAP").  (Id.)  Ms. Briggs refused to sign the memo or the EAP checklist.  (Id.)  Some three hours after the meeting ended, Ms. Briggs sent an email outside the organization in violation of the directive she had been given.  (Id.)

On that same date, around 9:30 p.m., Lacey received a call from a "private number" on his government-issued Blackberry phone.  (Id.)  Lacey, who was at his home, answered the phone, "MWR, Mr. Lacey."  (Id. at 1-2; DE # 18-1 at 2.)  According to Lacey, a male voice began screaming, "Is this Ray Lacey?  I am going to take you down."  (Lacey Declr., DE # 22-2, at 2.)  Lacey identified himself again and asked the caller to identify himself.  (Id.)  The caller yelled that he was "Byron Briggs."  (Id.)  The caller repeatedly yelled, "I am going to take you down," and "You're going down."  (Id.)  When Lacey once again asked for the caller's name, the caller identified himself as "Lisa's husband."  (Id.)  The caller then resumed yelling, and Lacey hung up the phone.  (Id. at 2.)

On 5 October 2013, Lacey emailed several officials at Fort Bragg, including Chief of Civil Law Michael McHugh, informing them of the threatening phone call and his history with Ms. Briggs.  (DE # 8-1, at 1-3.)  On 6 October 2013, Lacey also sent an email to George Olavarria, Deputy Director of Emergency Services ("DES") at Fort Bragg, asking for guidance regarding the threat.  (Id. at 9.)

On 7 October 2013, McHugh instructed Lacey via email to report the threat to the military police.  (Id. at 1.)  On that same date, Mr. Olavarria advised Lacey to contact local law

enforcement in his community to report the threatening phone call as the incident occurred at his private residence. (Id. at 7.) However, later that day, the DES office contacted Lacey and asked him to give a statement because the incident involved a Fort Bragg employee. (Id. at 6.) That afternoon, Lacey went to the DES office and gave a statement regarding the threatening phone call. (Lacey Declr., DE # 22-2, at 2.)

Later that evening, Lacey appeared before a magistrate in Harnett County, North Carolina and stated that an individual named "Byron Briggs" had telephoned him on 4 October 2013 and communicated threats in violation of N.C. Gen. Stat. § 14-277.1. (Compl., DE # 1-1, ¶ 5.) Lacey informed the magistrate that Ms. Briggs' emergency contact records listed her husband's name as Clarence Briggs. (Lacey Declr., DE # 22-2 at 2.) However, Lacey indicated that Mr. Briggs went by the name of Byron because the caller identified himself as "Byron" and "Lisa Briggs' husband." (DE # 18-1, at 17.) Lacey also provided the magistrate with an address from Ms. Briggs' employment records. (Id.) The magistrate subsequently issued a misdemeanor criminal summons against Byron Briggs, age 42, which required him to appear in Harnett County District Court on 14 November 2013. (Compl., DE # 1-1, ¶ 5 & Ex. A.) A person who identified himself as Bryron Briggs accepted service of the criminal summons at the Cumberland County Sheriff's Office on 5 November 2013. (See Peterson Declr., DE # 22-4, at 2-3.)

On 13 November 2013, Lacey requested three hours of "Other Paid Absence" leave to attend court in reference to the communicating threats charge, which was approved by his supervisor Doug Earle. (DE # 22-5.) That same day, before the court hearing on the charge, Lacey met with the state prosecutor and plaintiff's attorney. (Lacey Declr., DE # 22-2 at 2.) During this meeting, plaintiff's attorney indicated plaintiff was a 23-year-old man who had no

3

knowledge or affiliation with Lacey. (Id.) According to Lacey, the state prosecutor explained to him that he would have a difficult time proving the identify of the caller and recommended that Lacey drop the case. (Id.) Lacey agreed, and the prosecutor dismissed the case. (Id.)

The next day, on 14 November 2013, plaintiff filed the complaint against Lacey alleging the tort of malicious prosecution and demanding relief in excess of $25,000.00 and punitive damages. (Compl., DE # 1-1.)

On the same day the government removed this action, it also filed a motion to dismiss, arguing that plaintiff's malicious prosecution claim must be dismissed because plaintiff failed to present an administrative claim with the appropriate agency as required under the Federal Tort Claims Act, 28 U.S.C. § 2401. (DE ## 3, 4.) After briefing, the court entered an order denying the government's motion to dismiss without prejudice on 7 June 2014. (DE # 16.) The court concluded there was insufficient evidence to make a determination as to whether the substitution of the government as the defendant was appropriate in this case. (Id. at 6.) The court directed the parties to conduct limited discovery to address the scope of employment issue. (Id. at 7.)

After conducting such discovery, plaintiff filed the instant motion challenging the government's certification of Lacey's actions as occurring within the scope of employment.

## II. DISCUSSION

When a plaintiff asserts a claim against a federal employee, the Westfall Act empowers the Attorney General of the United States to certify that a defendant employee was acting with the scope of his or her employment at the time of the incident giving rise to the claim. 28 U.S.C. § 2679(d)(1): see also Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 419-20 (1995). The United States Attorneys are authorized to issue these certifications on behalf of the Attorney

4

General. Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1152 (4th Cir. 1997). Upon certification by the Attorney General or a United States Attorney, the United States is substituted as the party defendant, and any individual employees are dismissed from the action. 28 U.S.C. § 2679(d)(1); Lamagno, 515 U.S. at 420. Once the United States is substituted as the proper party, the relevant claims are then governed by the Federal Tort Claims Act. Id.

Unless challenged by a plaintiff, the certification of the United States is conclusive evidence that the employee was acting within the scope of his or her employment at the time of the alleged wrongful act or incidents. Gutierrez de Martinez, 111 F.3d at 1153. When a plaintiff challenges the certification, the certification constitutes prima facie evidence, and the burden shifts "to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." Id. To satisfy this burden, a plaintiff must come forward with either "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision . . . ." Id. at 1155. Mere conclusory allegations and speculation will not satisfy a plaintiff's burden. Id.

Where a plaintiff comes forward with sufficient evidence to satisfy his or her burden of proof, the burden shifts back to the government to "support its conclusion that the torts occurred within the scope of employment." Borneman v. United States, 213 F.3d 819, 827 (4th Cir. 2000) (internal quotations omitted). The Fourth Circuit Court of Appeals has recognized that this burden-shifting proof scheme may "make it advisable for the trial court to permit limited discovery or conduct an evidentiary hearing to resolve competing factual claims concerning the scope-of-employment issue." Id. "At all stages of the process, it is for the district court to weigh

5

the sufficiency of the evidence, to determine whether genuine issues of fact exist, and ultimately to resolve these factual issues." Id.

In determining whether certification should stand, the court must apply the law of the state where the tortious acts occurred in determining whether a federal employee was acting within the scope of his employment. See Jamison v. Wiley, 14 F.3d 222, 237 (4th Cir. 1994). ("Whether an employee's action falls within the scope of his employment under the Westfall Act is to be determined according to the rules of respondeat superior of the state in which the wrongful conduct occurred."). The alleged tort in this case occurred in North Carolina. North Carolina's scope of employment test examines whether "an employee, at the time of the incident, [acted] in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment," or "whether he stepped aside from his employment to . . . carry out an independent purpose of his own." Medlin v. Bass, 398 S.E.2d 460, 463 (N.C. 1990) (quotation marks and citations omitted).

The pertinent facts in this case are not disputed by the parties. The issue, therefore, is whether plaintiff has satisfied his burden of coming forward with evidence, or a forecast of specific evidence, that Lacey was not acting within the scope of his employment at the time of the incidents alleged in the complaint. The court finds plaintiff has not satisfied this burden.

In arguing that Lacey acted outside of the scope of his employment, plaintiff focuses on the fact that Lacey's actions concerning the threatening phone call occurred off-base and after working hours. Plaintiff asserts that though Lacey received the threatening call on his government-issued Blackberry phone, Lacey acted for a purely personal purpose when he took a call from a private number after-hours at his private residence. He further contends the fact that

6

Lacey's subsequent actions were consistent with the guidance of Fort Bragg officials is irrelevant because Lacey was effectively "clocked out" when he reported the threat to local authorities after work and when he took leave from work to attend court in reference to this matter.

In this case, though Lacey was at home and technically off-duty when he received the threatening phone call, he answered the call on his government-issued Blackberry phone from a caller who alleged to be the spouse of an aggrieved employee and threatened retaliation for workplace actions. Although the threatening call was from a private number, the Blackberry was used solely for official business (Lacey Declr., De # 22-2 at 1), and its number was not available to the general public (id.). Thus, it is doubtful that Lacey would have expected to receive a personal call on the Blackberry even if an incoming call was identified as coming from private number. This is evidenced by the fact that Lacey answered the threatening phone call by stating his title – "MWR, Mr. Lacey."

Moreover, the fact that Lacey pursued a criminal summons with local authorities while he was off-duty or on leave does not take his actions, as a whole, outside the scope of his employment. Here, Lacey's employment responsibilities reasonably included the filing of criminal charges regarding an incident arising from a work-related dispute as there is a federal interest in workplace control and safety assurance. (Earle Declr., DE # 22-6, at 1-2; DE # 18-1, at 6.) In pursuing a criminal summons, Lacey was following the direction of Fort Bragg officials who advised him to contact local law enforcement to report the threatening phone call. Additionally, Lacey took paid administrative leave to attend the court hearing in regard to this matter. (DE # 22-5.) Lacey's supervisor, Doug Earle, stated that he would have required Lacey

7

to take personal annual leave rather than paid administrative leave if he had considered Lacey's attendance at the hearing to be a private errand. (Earle Declr., DE # 22-6 at 1-2.) Thus, the evidence in the record establishes that Lacey was acting within the scope of his employment in causing the state magistrate to issue a criminal summons.

### III. CONCLUSION

In sum, the substitution of the United States as the defendant in this case was appropriate. Therefore, plaintiff's motion to set aside the government's certification of this action is DENIED.

This 6 January 2015.

                                        W. Earl Britt
                                        Senior U.S. District Judge